IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY L. LOOMIS,<br>          Plaintiff,<br><br>v<br><br>CLARK LABORATORIES, LLC,<br>          Defendant. | )<br>)<br>)<br>)  2:13-cv-1048<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26), filed by Clark Laboratories, LLC ("Clark"), with brief in support. Plaintiff ("Loomis") filed a brief in opposition to the motion and Clark filed a reply brief.[1] The parties have also thoroughly developed their respective positions regarding the Concise Statements of Material Facts and have provided numerous exhibits. The motion is ripe for disposition.

Factual and Procedural History

Loomis contends that his employment was terminated due to his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and PHRA, 43 Pa.C.S.A. § 955. Loomis was employed by Clark for ten years as a Manager in the Fuel and Lubrication Lab. He had specific responsibility for the Bottling Operation, which was the subject of an unfavorable customer audit in September 2012.

On September 14, 2012, the auditors made an oral report to Paul Heffernan, the Owner of Clark, and Gary Felicetti, the QA Manager. The auditors criticized the training, test methods and operation of equipment used in the Bottling Operation. On September 18, 2012, Heffernan

---

[1] The reply brief did not comply with the Practices and Procedures of this member of the Court, which are readily available on the Court's website.

directed Tim Barefoot, the President of Clark, to fire Nick Gurner, the General Manager of the Fuel and Lubrication Lab (and Loomis' boss). Bottling Program Manager Sandra Hrabczuk, who reported to Loomis, was fired several months later.

On September 24, 2012, the auditors provided a written report to Clark. On October 4, 2012, Heffernan convened a meeting to discuss the audit results. The meeting was attended by Heffernan, Barefoot, Barb Snowden, Pat Stockton (Lab Supervisor), Felicetti and Loomis. There is a dispute as to what exactly was said by Loomis at this meeting. The Clark representatives testified that Loomis announced his intent to retire. Loomis testified that he merely informed the group that he and Stockton, another older employee, would not "be here forever" such that Clark needed to train their replacements. On October 13, 2012, Heffernan sent a followup email which referred to the departure of key lab people and the need for backup for Loomis and Stockton, but did not specifically state that Loomis was going to retire.

On October 22, 2012 another meeting was held. Again, there are disputes as to what occurred. Clark contends that Loomis agreed that Snowden would be an excellent replacement for him upon his retirement. Plaintiff contends that he merely agreed that Snowden would make a good supervisor some day. According to Loomis, it was not until a meeting with Heffernan the week before Thanksgiving that he realized that Snowden was going to be given his job. In response, Loomis told Heffernan that he was not ready to retire because he was not eligible for Social Security and his daughter was getting married.

On November 20, 2012, Heffernan sent an email which announced Loomis' retirement effective December 31st and Snowden's promotion. Loomis continued to work to transition his job duties to Snowden. On the last work day of the year, Clark organized a retirement/holiday party at which Loomis accepted a small gift and thanked everyone.

2

Loomis filed for unemployment benefits.  In its written response, Clark took the position that Loomis would have been discharged for cause due to the audit result, had he not voluntarily retired.  Heffernan had never previously told Loomis that he was going to be terminated for poor performance or disciplined for his role in the poor audit, because Loomis had offered his retirement at the beginning of the October 4th meeting.  At Loomis' unemployment hearing, Heffernan testified that Loomis had objected to a forced retirement, but Heffernan stated that he could not "unpromote" Snowden.

Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  "The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v*, 477 U.S. at 247-48.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell

3

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Rather, a dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. 249.

Discussion

There are at least two genuine issues of material fact which prevent the entry of summary judgment in this matter. First, it is disputed whether Loomis voluntarily chose to retire or was forced to do so. Second, when the record is viewed in the light most favorable to Loomis, it is unclear whether or not Loomis would have been fired due to the poor audit results.

The Court has no difficulty in concluding that Loomis has made out a valid prima facie case. Defendant has cited no authority for its novel proposition that "accepting" a retirement and setting a date does not constitute an adverse employment action. In *Swain v. City of Vineland*, 457 Fed. Appx. 107, 110 (3d Cir. 2012) (unpublished), the Court explained the somewhat expansive term "adverse employment action":

> The ADEA defines an adverse employment action as discrimination with respect to the "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). It requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). While direct economic harm is probative, so, too, is conduct that substantially decreases one's earning potential or disrupts his working conditions. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).

A reasonable jury could conclude that Loomis was forced to retire. Such a significant change in his employment status substantially decreased his earning potential and disrupted his working conditions.

The Court also concludes that the inconsistencies in the record and Clark's stated reasons support an inference of pretext. Clark has articulated two distinct legitimate, non-discriminatory reasons for the termination of Loomis' employment: (1) voluntary retirement; and (2) termination for cause due to the poor audit results. Clark, in essence, combines these reasons by arguing that Loomis would have been fired if he had not announced his retirement. There is no direct evidence of age discrimination and there is certainly some evidence in the record to support Clark's theory. However, there is also contrary evidence. *See Burton v. Teleflex Inc.,* 707 F.3d 417, 427 (3d Cir. 2013) (Plaintiff is not required to produce direct evidence of discriminatory intent to demonstrate pretext). For example, it appears to be undisputed that Loomis did, in fact, object to the December 31st retirement date. In addition, Loomis remained in his job for three months after the audit and there was no contemporaneous evidence that Loomis would be disciplined for the audit results. Loomis was replaced by a substantially younger person. It is the province of the jury to finally determine which witnesses to believe and which inferences to draw from the evidentiary record.

5

Conclusion

In accordance with the foregoing, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26) will be **DENIED**.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY L. LOOMIS,<br>　　　　　Plaintiff,<br><br>　　　　v<br><br>CLARK LABORATORIES, LLC,<br>　　　　　Defendant. | )<br>)<br>)<br>) 2:13-cv-1048<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER OF COURT

AND NOW, this 14th day of October, 2014, in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26) is **DENIED**. Plaintiff shall file his Pretrial Statement on or before **November 4, 2014**. Defendant shall file its Pretrial Statement on or before **November 25, 2014.** A Pretrial Conference will be held on **December 2, 2014 at 9:30 a.m.**

　　　　　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

cc:　**Samuel J. Cordes, Esquire**
　　　Email: scordes@cordeslawfirm.com
　　　**John E. Black , III, Esquire**
　　　Email: jblack@cordeslawfirm.com

　　　**Andrew B. Klaber, Esquire**
　　　Email: aklaber@chartwelllaw.com